George Kitto, as Administrator of the Estate of Helen Kitto, Deceased, George Kitto, as Administrator of the Estate of Arlene Kitto, Deceased, and Roberta Kitto and Donna Kitto, Minor Daughters of Helen Kitto, Deceased, by George Kitto, Their Father and Next Friend, Plaintiffs-Appellants, v. Charles Wattleworth, Individually and as County Superintendent of Highways Jo Daviess County, Illinois, and Leonard Hall, Individually and as Road Commissioner for the Township of East Galena in Jo Daviess County, Illinois, Defendants-Appellees.

Gen. No. 11,264.

Second District, First Division.

February 19, 1960.

Rehearing denied March 14, 1960.

Released for publication March 14, 1960.

Knight, Ingrassia, Bourland, and Roszkowski, of Rockford, for plaintiffs-appellants.

Nack and Nack, of Galena (James W. Richardson, of counsel) and Harold D. Nagel, of Stockton, for appellees.

JUSTICE DOVE delivered the opinion of the court.

This is an eight count complaint. By the first count the personal representative of Helen Kitto, deceased, seeks to recover damages from Charles Wattleworth, individually and as County Superintendent of Highways of Jo Daviess County, Illinois, for the alleged wrongful death of his intestate. This count alleged that on the afternoon of December 29, 1957, the said Helen Kitto, accompanied by her children, Arlene, Roberta and Donna, was driving a Ford Sedan in a southeasterly direction, along a gravel surfaced road, known as "Muddy Hollow" road, in Jo Daviess County, Illinois, approximately one-fourth of a mile southeast of Galena.

This count then alleged that this road was much used for travel by automobiles and other vehicles, which was well known to defendant; that the car Helen Kitto was driving on this occasion slipped and skidded on ice which had formed on the surface of the highway causing said motor vehicle to plunge off the roadway, at a point where a stone bridge or culvert was located, overturn and fall fifteen feet into a ditch or creek located at that point.

This count then alleged that the defendant, Charles Wattleworth was the duly appointed County Superintendent of Highways of Jo Daviess County and averred that it was his duty to properly inspect and maintain the road, its bridges and abutments. It was then charged that defendant, notwithstanding said duty, was guilty of one or more of the following acts and omissions; (a) permitted the roadway at said point, to remain in a wet and slippery condition; (b) failed to have the surface of said road covered with asphaltum, cinders, gravel or other substance which would have prevented the road from being slippery when wet; (c) failed to give any notice or warning to motorists using said roadway that the surface thereof was slippery when wet; (d) failed to erect a guard rail, fence or barrier to prevent motor vehicles from falling off of said bridge or culvert; (e) allowed the bridge and fence to deteriorate so that no protection was provided to prevent automobiles from going over and falling off of said bridge; (f) failed to give proper, if any, notice, signal or warning, to motorists using said roadway, that there was no fence, guard rail or barrier to prevent automobiles from falling off of said bridge; (g) permitted said roadway and bridge to remain in said condition for a long period of time and (h) failed to properly inspect and maintain said roadway, guard rail and bridge contrary to the statute. (Ill. Rev. St. 1957, Chap. 121, sec. 56–1.)

This count then averred that at the time of the occurrence and prior thereto decedent was in the exercise of due care for the safety of her person and property and that her next of kin were also in the exercise of due care and caution for the safety of said decedent. It was then charged that as a direct and proximate result of the aforesaid negligence of the defendant, the said Helen Kitto sustained injuries

from which she died on December 29, 1957, leaving her husband and two minor children, her next of kin, her surviving.

Count two sought a recovery for the alleged wrongful death of plaintiff's intestate, Arlene Kitto, a minor. Count three sought a recovery for the personal injuries which Roberta Kitto allegedly received upon the occasion in question and count four sought a recovery for the injuries, Donna Kitto, also a minor, allegedly received. Each count was directed against Wattleworth, individually and as County Superintendent of Highways and each count charged the same negligent acts and omissions and contained the same allegations of the duty of the defendant as count one.

By count five the personal representative of Helen Kitto, deceased, sought a recovery against Leonard Hall, individually and as Road Commissioner for the township of East Galena for the alleged wrongful death of this intestate. By count six a recovery was sought by the personal representative of Arlene Kitto, deceased, against said Hall, individually and as Road Commissioner for her alleged wrongful death. By count seven Roberta Kitto sought to recover from Hall, individually and as Road Commissioner for the personal injuries she received upon the occasion in question and in the eighth count, Donna Kitto sought to recover from Hall, individually and as Road Commissioner, for the personal injuries sustained by her upon this occasion. Each of these four counts alleged the same negligent acts and omissions and each count contained the same averments as to the duty of the defendant as count one. The trial court sustained the motions of the several defendants to dismiss on the ground that the doctrine of governmental immunity applied and from an appropriate final judgment dismissing each count of the complaint the plaintiffs appeal.

In Town of Waltham v. Kemper, 55 Ill. 346, Jacob Kemper sought to recover damages from the Town of Waltham for the pain he suffered during an illness occasioned when he became wet and chilled in extricating his team of horses and himself at a time when his team and wagon were unavoidably mired in a public highway in the Town of Waltham. The plaintiff recovered a judgment in the trial court and defendant appealed. In reversing the judgment of the trial court our Supreme Court held that the defendant, the Town of Waltham was not liable at common law and that no right of action against it had been given by statute.

Nagle v. Wakey, 161 Ill. 387, was an action brought by George Nagle against Jeremiah Wakey, Englebert Sauter and W. A. Dickeman, the three commissioners of highways of the town of Grand Rapids of LaSalle County to recover damages for personal injuries which the plaintiff received when one of the team of horses which he was driving became frightened and crowded the other horse off the side of a bridge which was fourteen feet wide and eighteen feet long. The floor of the bridge consisted of floor joists covered with planking and was three or four feet above the stream beneath. There was no railing at the sides of the bridge. The wagon turned over and plaintiff went over the side of the bridge with the wagon and sustained a broken leg. In the trial court the plaintiff recovered. The Appellate Court reversed the judgment of the trial court and held that the plaintiff had no right of action.

The Supreme Court adopted the opinion of the Appellate Court and affirmed its judgment. In the course of its opinion the Appellate Court stated that whether an action would lie against the commissioners of highways, for damages resulting to an individual from the manner in which the commissioners have

■

discharged their official duty to the public, on the ground that it had not been discharged with reasonable prudence and skill, had not been settled by any previous decision of the Supreme Court of this State. The court observed that it had often been decided that an action for such damages could not be maintained by an individual against the Town, citing, among other cases, Town of Waltham v. Kemper, 55 Ill. 346, supra. The court stated that the reasons always given for exempting towns from such actions, are that they were established as local subdivisions and agencies of the state for governmental purposes and that duties are imposed upon them without their assent, exclusively for public purposes. The court then went on to say that the same reasons apply to commissioners of highways as such commissioners are an agency through which a town performs a public duty.

In Molitor v. Kaneland Community Unit District No. 302, 18 Ill.2d 11, 163 N.E.2d 89, our Supreme Court very recently held that a school district is liable in tort for the negligence of its employee. As stated by the Supreme Court the question which the court answered in the negative was: "Should a school district be immune from liability for tortiously · inflicted personal injury to a pupil thereof arising out of the operation of a school bus owned and operated by said district?"

The court stated that the rule established by it in 1898 was that a school district is immune from tort liability. In reconsidering the question of such immunity the court, in an exhaustive opinion, pointed out that the doctrine of the sovereign immunity of the state was first extended to a sub-division of the state in 1788 in the English case of Russell v. Men of Devon, 2 Term Rep. 671, 100 Eng. Rep. 359, and adopted in Illinois with reference to towns and coun-

ties, in Town of Waltham v. Kemper, 55 Ill. 346, supra. The court said that there were no logical distinctions between a community unit school district and any other type of school district insofar as the question of tort liability is concerned as all are quasi-municipal corporations created for the purpose of performing certain duties necessary for the maintenance of a system of free schools.

The court in the Molitor case surveyed the whole picture of governmental tort law and stated: "It is a basic concept underlying the whole law of torts today that liability follows negligence and that individuals and corporations are responsible for the negligence of their agents and employees acting in the course of their employment. The doctrine of governmental immunity runs directly counter to that basic concept. What reasons, then," inquired the court, "are so impelling as to allow a school district, as a quasi-municipal corporation, to commit wrongdoing without any responsibility to its victims, while any individual or private corporation would be called to task for such tortious conduct?"

The court then considered and discussed the reasons and theories advanced for the application of the immunity rule and stated that none of the reasons has any true validity today and concluded: "The rule of school district tort-immunity is unjust, unsupported by any valid reason, and has no rightful place in modern day society."

The court recognized that retroactive application of its decision would result in great hardship to school districts which had relied on prior decisions upholding the doctrine of tort immunity and concluded that justice would best be served by holding that, except as to the plaintiff in the instant case, the rule established by the court should apply only to cases arising out of future occurrences. In so holding the court

stated that at least two compelling reasons exist for so applying the new rule while otherwise limiting its application to cases arising in the future. "First," said the court, "if we were to merely announce the new rule without applying it here, such announcement would amount to mere dictum. Second, and more important, to refuse to apply the new rule here would deprive appellant of any benefit from his effort and expense in challenging the old rule which we now declare erroneous. Thus there would be no incentive to appeal the upholding of precedent since appellant could not in any event benefit from a reversal invalidating it. . . . Our present decision will eliminate much of the hardship which might be incurred by school districts as a result of their reliance on the overruled doctrine, and at the same time reward appellant for having afforded us the opportunity of changing an outmoded and unjust rule of law."

Among the statutory duties which devolved upon appellee, Leonard Hall, as highway commissioner of the Town of East Galena at the time of this occurrence, was to determine the taxes to be levied on property within his town for road and bridge purposes. He was required to state separately the several amounts to be levied for the construction of roads, the maintenance of roads, the construction of bridges, the maintenance of bridges, the oiling of roads and other enumerated items. He directed the expenditure of all money collected in the town for road and bridge purposes and he had general charge of the roads and bridges of this town. He was not only obligated to construct, maintain and repair the roads and bridges within his town but was responsible for such construction, maintenance and repair and it was his duty to keep them in repair and improve them so far as practicable. (Ill. Rev. St. Chap. 121, Art. 6, Sub. Div. 2, par. 56.1, sec. 50.1.)

The duties which devolved upon Charles Wattleworth, as Superintendent of Highways of Jo Daviess County are set forth in the statute. Subject to the rules and regulations of the Department of Public Works and Buildings he acts for the County in all matters relating to the supervision of the construction and maintenance of any road or bridge constructed or maintained at the entire expense of the county or at the joint expense of the county and any town. He advises and directs the highway commissioner of the towns in his county as to the best methods of repair, maintenance and improvement of highways and bridges, and the grades of the roads of the town must be constructed according to plans approved by the County Superintendent of Highways. Subject to the direction of the Department of Public Works and Buildings, he supervises the repair and maintenance of all state aid roads in his county. (Ill. Rev. St. 1957, Chap. 121, Art. 3, par. 8.3.)

In the event any highway commissioner fails or refuses to repair or properly maintain any road or section of any road in his town after notice as indicated in the statute, the procedure in order to bring about such repairs is outlined in the statute. (Ill. Rev. St. 1957, Chap. 121, Art. 6, Sub-Div. 2, par. 56–a Sec. 50–a.) In brief it provides for the presentation of a petition to the County Superintendent of Highways followed by notice and a hearing. And if it appears to the County Superintendent of Highways, as a result of the hearing, that the road described in the petition is in need of repair or is not properly maintained by the highway commissioner of the town, he shall order the highway commissioner of the town to make such repairs as appears to the County Superintendent of Highways to be proper or necessary or to properly maintain such road or section thereof.

492

If the highway commissioner wilfully refuses to comply with the order of the County Superintendent of Highways, he is subject to removal from office. (Ill. Rev. St. 1957, Chap. 121, Art. 6, Sub-Div. 2, par. 56–a Sec. 50–a).

Mr. Justice Phillips in his dissenting opinion in Nagle v. Wakey, 161 Ill. 387, supra, (p. 395) calls attention to the fact that the statute at that time provided that the commissioners of highways should have charge of the roads and bridges of their respective towns and that it was their duty to keep the same in repair and to improve them so far as practicable. He referred to the fact that such commissioners were vested with authority to levy taxes and keep in repair the roads and bridges of their respective towns. In disagreeing with the conclusion arrived at he said: "Under the rule announced by the majority of the court disregard is had of the well known rules of law that a private remedy exists where damage is sustained by reason of an unlawful act. . . . By the opinion of the majority, however negligent they (the commissioners) may be, provided it is not an absolutely willful and malicious negligence, no recovery can be had for the non-performance or negligent performance of their duties. It seems to me this is against law and against reason."

Upon the oral argument of this case in this court, counsel were not in agreement as to the status of "Muddy Hollow" road in the highway system of Jo Daviess County. The County Superintendent of Highways is primarily a supervisory employee of the County. He has no power to levy taxes, to purchase machinery or equipment and the only funds he handles are those appropriated by the County Board. The theory of his counsel in the trial court was, and in this court is, that as a County officer and a deputy

493

of the Chief Highway Engineer of the State he is immune from an action charging him with negligence in the performance of his official duties.

Separate counts of the instant complaint are directed against him and in these counts it is his alleged tort which occasioned the damage and injuries of which plaintiffs complain. Unlike the Molitor case this is not a proceeding to hold a quasi-municipal corporation liable. It is directed against separate alleged individual tort feasors. The Molitor case stated that the basic concept underlying the whole law of torts is that liability follows negligence. That is what is said in the dissenting opinion in Nagle v. Wakey, 161 Ill. 387, 395, supra.

The instant case was decided prior to the time the Molitor case was determined and the trial court very properly followed the holding in Nagle v. Wakey, 161 Ill. 387, supra. If, however, liability follows negligence, no reason has been suggested why liability should not follow the defendants in the instant case and they are not immune from an action of this character.

In view of the language employed and the conclusion arrived at in Molitor v. Kaneland Community Unit District No. 302, 18 Ill.2d 11, supra, the allegations of the several counts of the complaint in the instant case require an answer by the defendants.

The judgment of the circuit court of Jo Daviess County is reversed and this cause is remanded to that court with directions to overrule the motion of defendants to dismiss.

Reversed and remanded with directions.

McNEAL, P. J. and SPIVEY, J., concur.